Case number 25-5173, Victory Global LLC v. Fresh Bourbon LLC, Oral Argument Not to Exceed, 15 minutes per side. Brian Johnson for the appellant, you may proceed. Yes, we need a drink. That was not my design. Well, I was thinking my own interests. Last case was a hard one. You're going to make this easy for us, aren't you? I certainly will do my best, Your Honor. Welcome to the Sixth Circuit. Thank you. No, interesting argument before us, so that was a good one to listen to. May it please the Court, I'm Brian Johnson. I represent the appellant, Victory Global LLC, which does business as Bro Brothers. Bro Brothers is the first African-American owned distillery in the Commonwealth of Kentucky. And the appellee, Fresh Bourbon, by saying that it instead was the first African-American owned distillery in Kentucky, violated the Lanham Act by making numerous literally false statements. Did it say to produce bourbon, or what was the key verb? So, that sort of gets to the crux of the argument, so I'm glad you asked. Produce is the same as distill. It has to mean the same thing. Why, really? Keep going? It does. And the reason it does, there are several reasons. So, the easiest way to know that is through Fresh Bourbon's own argument compared to its own discovery responses in this case. Because when the district court said, made or produced may mean something different than distilled, that conflict, that was consistent with Fresh Bourbon's argument, but it conflicts with what Fresh Bourbon said it was actually doing in 2018, which is the relevant time period for those two verbs. Why wouldn't you say they were even distilling then? Yeah, they weren't using their own facilities, but they had come up with their own recipe, and they were using other people's facilities to do it. I don't understand why that isn't enough to say that they were at least under the literally false test. That is not literally false, because that's what they were doing. They were producing using other people's capital to make the bourbon. Understood. But they couldn't say that and say that they were lawfully engaging in those activities. Now, in their interrogatory responses, what they said is, Bro Brothers claims that it was distilling bourbon and had the first African-American master distiller, and it goes on to say that's something Fresh Bourbon, something we were doing back in 2018. So, in their discovery responses, Fresh Bourbon says, yeah, we were distilling in 2018. They tried to get around it by going to verbs made and produced and manufactured. So, it would have been illegal for them to distill in 2018? Is that because they didn't have a license? It's because they didn't have a license, and it's more than just that. Isn't that kind of a technical argument, do you think? Most consumers would say, when you say you're the first distillery, you're the first one to have a – that strikes me as quite technical. It would just be who was the one who was doing it first, whether legal or illegal. I don't think that would matter to the meaning of the words. I would think that what people would presume is that when someone says they're the first African-American-owned distillery in Kentucky, that implicitly means they're acting lawfully by engaging in doing so. Just to help you out, where is that statement, we are the first African-American-owned distillery in Kentucky? Where is that in their advertising? That is contained in news articles that were placed on Fresh Bourbon's website. But isn't that considered by the Commonwealth of Kentucky to be the first black-owned distillery in Kentucky? So there's that statement also, but if you read through the entire resolution from the Kentucky Senate, what it says at the end is the members, quote, acknowledge the importance of this being the first black-owned distillery in Kentucky. That resolution says both. Initially it says we're considering it. The fact that the legislature did this kind of insulate you from a trademark claim, I must say that was a confusing part of this for me. I'll give you one Kentucky-specific example. I don't think it's truthful that all whiskey distilled in Kentucky can only be called bourbon. That's a lie. Everyone would say in the world that this bourbon is whiskey, and yet that is like fighting words in Kentucky. I don't want to challenge your honor here, but I'm trying to illustrate the point that the legislature has this authority, and it's been genius. It's been very helpful to the bourbon industry, and I'm good with it. But it seems really funny to attack truthfulness of statements of the legislature. It's a very good example where you can only call it bourbon, otherwise it's a lie. And I'm like, no, no, it would not be a lie to call it whiskey. It's only because the legislature said that. As a Kentucky bourbon aficionado, I would agree that simply making it in Kentucky doesn't mean it's bourbon, or making bourbon outside of Kentucky means it has to be whiskey. But I think that with respect to this issue, first of all, as we explained in our briefs, the resolution was drafted at least in part or contributed to by Fresh Bourbon's owners. So they're providing that information to the legislature. Don't you think the bourbon makers in Kentucky had a little bit to do with this law, the law that says it has to be called bourbon? I don't know the answer to that. I don't either, but it sure seems like a good idea. What we do know is that when we're talking about what the law actually is in Kentucky and you look at what a distillery means, so if we're talking about the first African-American-owned distillery, a distillery is a place. It is a location. It's quite possible I'm just wrong. This is just purely intuition. But is there a case where someone says, hey, you know, you lobbied for and got a legislature or city council to say something. It was a favorable statement for your product, and then because of your use of it on your website in an advertisement, you can be hit with trademark violation. I just want to make sure that's been done before. I'm just curious. Do you know? We've looked, and we're not aware of one, to be honest.  So I think what we would look at is if someone makes a statement or wants to advertise themselves, in fact make it the focal part of their advertising campaign, that they're the first African-American-owned distillery in Kentucky, there has to be a presumption that they're acting lawfully by engaging in that activity. I don't think people would feel comfortable buying unlawfully manufactured bourbon. What do you do with the hypo, the Pappy's hypo, that it's actually made by a different distillery? That's just the trade name or a line of bourbon name that's made at Buffalo Trace. So that's very different. So I don't understand that. So the name of the bourbon is a different name than the name of the distillery? Yeah, that's the way it's marked. But it's owned by the same company either way? It's all made by Buffalo Trace Distillery in Frankfort, Kentucky.  Yes. So I think what creates a problem here is if we're talking about made and produced and going back to the 2018 time period where Hartfield, by all of the evidence, is distilling bourbon for Fresh Bourbon. It is the distiller. And that's what the label on the bottle says. When you go back to the level of participation that Fresh Bourbon had with respect to that process, they make this claim that they were involved, they were working on a flavor profile, they were tweaking it, they had a master distiller who was essentially apprenticing at Hartfield. The reason that none of that can mean they were actually a distillery at that time is in KRS 243.020 subsection 1. And what that statute says is no person can do any act with respect to the manufacture of alcoholic beverages unless they're an employee or a contractor of someone who has a license. But, I mean, you decided to go down the road of literally false as opposed to deceptive. And it just seems to me, I don't think the literally false turns on legislative definitions. I guess I don't quite see that. Yeah, so you would not say that a bootlegger who has its own distillery is engaged in distilling? Certainly not lawfully just by virtue of being a bootlegger. But we're just talking about the plain language. And I would say, yeah, that's why you'd say they're unlawfully doing it rather than just coming up with an entirely different word, unlawful distilling. The reason why you have to add the adjectives unlawful and lawful is that both are distilling. There's lawful distilling and unlawful distilling, but we call them both distilling. And you'd say even if it's done unlawfully, they would still be the first, even if they were doing it unlawfully. But how can that be a true statement that we're distilling when it's something that they're not authorized to do in the first place? You can do lots of things that are not authorized. I think it's kind of funny that you think this is such bad advertising. I think the best advertising might be longest illegally produced bourbon in Kentucky. I think try that. So judge. You're going to do really well. Actually, judge. Go back to the prohibition and we were breaking the rules in the hills or hollows or whatever you call it in Kentucky, and I think you're going to get some interest. Hollers in Kentucky. Hollows, yeah, sorry. So I was actually thinking about that very comment this morning while I was getting ready for this argument because I think if the statement had been fresh bourbon is the first company operated and owned by African-Americans to unlawfully distill bourbon in the state of Kentucky, that would have been a true statement. That would have been. But that's not what the statement is. Their statement is clearly designed to convey that they're the first. So do we really want to countenance that sort of thing where you have, frankly, acts that violate Kentucky and federal law by engaging with this Hartfield contract distilling issue? Well, I think my answer to that, and I guess this goes back to Judge Murphy's questions, is trademark law does some things and regulation of alcohol production does others, and people illegally doing something are going to pay for it, but it's just not through trademark law. So that seems to me the way that my first instinct on how to think about it.  I think, though, wouldn't it be improper, though, for someone to make that sort of representation to the general public, which necessarily has to convey that the activities through which that bourbon is distilled, through which it gets into the bottle, have been properly completed and done illegally? I mean, doesn't this come up in wine production all the time? You know, some people, the label is really just a grape maker, but they don't do anything, or it's really just someone who puts the grapes together, but the grapes are everything and they're from somewhere else. I mean, this happens all the time, and that's why you, it's literally false. Like, you really have to prove that it's literally false. Right. So I think the other issue with respect to literally false, then, and your example leads into this, what I'm about to say, you can certainly have that arrangement in wine just as with bourbon. I'd have to ask a California person about the wine. But with respect to the bourbon, the reason we know that fresh bourbon was not distilling during the time period in which they say they were distilling is because the label on their own bottle said back then at that time, distilled by Hartfield for fresh bourbon. That's on their own bottle. And yet what they're marketing themselves out in the public through their website and social media and otherwise is, we distilled it, not it was distilled for us. Okay. I see your time's up. You'll get your full rebuttal. Thank you. And on the other side. Thank you. Good morning. Good morning. I please the Court, Perry Adanik. It's my honor and privilege to represent fresh bourbon in this case. One thing I do want to make clear before we get deep into this, all bourbon is whiskey, but not all whiskey is bourbon. We have Judge Martin said that many times. It makes sense. We don't drink that Tennessee swill. We don't drink any scotch. Bourbon is bourbon. Other things we don't care about. Now, produce and distill have to mean different things. Well, what's your response to the thing? The way he just ended was that you acknowledged, you seem to acknowledge this distinction by the label in this other company. The labeling is set by the Tax and Trade Bureau and talks about specific distilled, distillation processing plants, I think is the term. I'm not sure exactly what it is. You have to list the actual place. For example, Pappy Van Winkle bottles. Pappy Van Winkle bottles will tell you that they're distilled by the Old Root Van Winkle Distillery. There is no such place. There never has been. It's distilled at Buffalo Trace in Frankfurt. Before that, it was at Sturtzell Weller. Contract distilling is nothing new. Contract distilling has been around since well before Prohibition, where a producer, if it wants to, can go and lease an entire distillery, either on a full-time basis or even on a part-time basis. There's case law talking about that with regard to taxes, among other things. So that's nothing new. In this particular instance, we do have the evidence of the distiller at Hartfield, who says, yeah, when they first came in, I showed them how to operate the machinery. I walked them through it. I helped them make some batches. But after that, they're making it on their own. And what his testimony was is I essentially turned it over to them and let them do whatever they needed to do to produce their product. And that's exactly what they did. They went in and they used their people and their master distiller to make their product. Now, they're using somebody else's license to do it. And if that's unlawful bourbon, then where's the evidence that the TTB or the Alcohol Beverage Control Board had any problem with it? There isn't any because there isn't anything wrong with it. What about using the legislature to help in your advertising? I'm trying to sort that out. So I assume it's accurate that your clients were for this resolution or whatever we're going to call it. Doesn't that seem a little, I don't know, unfair competition or something? It seems a little unfair. Well, in this particular instance, Senator Thomas, Kentucky state legislator, decided that he wanted to introduce this resolution to honor these people. Inspiration in the middle of the night. Now, they did provide information to him. But let's look at what they provided because that's in the record. And what they provided was an email that said, suggested, Fresh Bourbon Distilling Company in Lexington, Kentucky, founded in 2017, is hereby recognized as the first African-American owned company to produce bourbon in the state of Kentucky with an African-American master distiller since slavery. That's what Fresh Bourbon sent to Senator Thomas' office. The resolution came back a little bit different. It said, Fresh Bourbon Distilling Company is considered to be the first black owned bourbon distillery in Kentucky. That's a distinction that was apparently made by Senator Thomas or somebody on his staff. Why? The record doesn't tell us why that change was made. It seems like there's a lot of effort going into being who's marked as the first, if you can get the law to enshrine that you are the first and things like that. Do you think it's material then to consumers that being able to mark yourself as the first black owned is important? Material in what sense, Your Honor? Because it's certainly material to Sean and Tina Edwards. They certainly want to be the first. Everybody wants to be the first. Whether that's material as defined by the Lanham Act is a totally different question. And in this particular instance, Judge Caldwell found that there wasn't any evidence of materiality at all. Why can't you rely just on the intuition that the fact that folks are promoting this, they're kind of lobbying the legislature to get recognition, is it self-evidence that it might be material to a consumer because you want to use it? People lobby the legislature to get recognition all the time for all sorts of different things. There's nothing really new. Do you think that's enough to create a genuine issue of material fact for a jury to say that maybe a consumer might? I don't think it is. And in this particular instance, Judge Caldwell did exactly what she was asked to do. There were cross motions for summary judgment. Bro Brothers' motion for summary judgment says, we think these particular statements are false. Fresh Bourbon said, we don't think they're false at all. We think they're absolutely true. So that's exactly what Judge Caldwell did, and she went through them one by one to determine whether they were true or false. Some she found were true. Some she found maybe ambiguous. But then she went beyond that. She said, okay, for the purposes of the Lanham Act, let's assume that they all are false. Then what? And she says, okay, if we presume them to be false, and she specifically said we're not finding that to be the case, but just for the purposes of this analysis, we presume them to be false. That means deception is presumed. Okay, fine. That's the first two steps. The third step is you have to show that they were material and made a difference. So what evidence do you think would have sufficed? What if they brought in one person who was just a bourbon drinker? I don't think that would be enough. Yeah, I would have bought this one over that one. I don't think that would be enough. It's not shown to be enough in other cases. Typically what happens is you'll do a market survey of some sort. The problem is from their perspective. Is there a percentage? Like suppose you do a trademark survey of just average consumers of bourbon. Right. And it comes back that 90% wouldn't care, but 10% would. Is it just unclear in the case law what is the objective standard for materiality? If it's clear in the case law, I haven't seen it that clear. Would you think that 10% of consumers? I would not think that 10% would be enough. Really? Because 10% of people can be swayed by pretty much anything. I would think it would have to be a significant amount. Now what that significant amount, I couldn't tell you if it was 30% or 50%. Does case law say you need a survey to establish materiality? In this particular instance, though, there was no survey. There was not anything. I'm trying to figure out. I mean that's a high cost of doing business that you always have to do a survey. And I guess I'd be a little surprised that you always have to have a survey to satisfy the materiality prong. That's what the cases suggest as a possible way of doing that. No, no, no. I'm asking is it necessary? Like I understand it's sufficient, but I'm trying to figure out. I suspect there may be other ways to do it. Does it depend on the type of statement? So what if it was just a – I forget what circuit it was. The cashmere case suggested if it was a misstatement about the characteristics of the – like you said this was organic and it was filled with pesticides. You probably wouldn't need a survey to show that that was material. Well, that was about an actual condition of the product. Yeah. The cashmere case said we're using recycled cashmere. We're advertising it as pure virgin cashmere. Did you have like an expert who maybe says these are the reasons people buy or don't buy particular alcohol products? That could be one way of doing it. But then, of course, we have to determine how the expert came to that conclusion. Did you think you would – in the hypo I just gave you, you would not need a survey or an expert. Wouldn't it just be obvious that it was material? In something like the cashmere case, it could be. As an example, if we said this is scotch whiskey and not bourbon whiskey, then that's an inherent quality of the product. In this particular instance, who's first, who's not first, I think you need more to show that that makes a difference to anybody other than the people that are producing the product. And in this particular case, we don't have it. So I think Judge Caldwell correctly found there was no evidence of materiality at all, up to and including the one customer coming in and saying this made a difference to me. There just wasn't any. So what we have is we have on this particular issue a complete failure proof. Now, Judge Caldwell didn't even need to get there because she found that in the initial analysis that the statements weren't actionable under the Lanham Act. Either they were true, they were matters of opinion, or in certain cases, there was no way to determine at all. For example, the statement that these were the first African Americans to produce their own bourbon since slavery. Plaintiff's own expert says we have no way of confirming that. There is nothing in the historical record that tells us the answer one way or the other. So in that particular instance, Judge Caldwell said, they can't show that it's false. It might be ambiguous, maybe it's true, maybe it's not, but nobody knows. Just like the statements about Evan Williams being the first person to char the inside of the barrel. That's the legend. Evan Williams certainly advertises that. Does anybody know for sure that it's true? No, and it probably isn't. Because historically, there are indications that charred barrels existed before Evan Williams ever made whiskey. Yet that's part of their advertising and that's part of their story. In this particular case, we don't have any evidence one way or the other. So Judge Caldwell looked at the statements that the plaintiffs asked her to look at. And if you read her opinion, she says, this is where I picked up the statements that they asked me to look at. From the complaint, from plaintiff's motion for summary judgment, and from plaintiff's responses to our motions for summary judgment. She did exactly what she was asked to do. And in our view, she did it correctly. All right, thank you very much. I appreciate your argument. We'll hear rebuttal. Mr. Johnson. Thank you, Robert. So first of all, with respect to fresh bourbon statement, that distill and produce have to be two different things. Again, when we look at the laws that actually govern this industry, they're exactly the same thing. I mean, if you look at the Kentucky statute, 241.010.27, a distiller is one who is engaged in the business of manufacturing distilled spirits. The CFR that applies to this. A distiller is one who produces distilled spirits. Do you agree that if the statements are literally false, you still have to prove materiality? Yes. Deception is presumed materiality. And what did you rely on for materiality here that you think that the district court judge overlooked in the alternative holding? I think, frankly, it comes back to some of Judge Murphy's questions. So I think that what we have here is a situation where the entire marketing campaign, the entire advertising strategy is focused on this one element, being the first. It's hard for me to believe that fresh bourbon would think that after having set up its whole marketing campaign based on that, it doesn't really think it's material. Does that suggest that we just do away with materiality? Because you're essentially saying the very fact that they engaged in the false advertising is itself sufficient evidence of materiality, which, of course, you're not going to bring a Lanham Act claim unless you think there's false advertising. So why wouldn't you just do away with materiality under that logic? Because of the breadth of the campaign. I think that when you look at these other cases that we've cited, like the Time Warner case where you have two different commercials that are an issue, that's not what we have here. So what we have here is a resolution that, however it came to be, says it's the first black-owned distillery in Kentucky. Fresh bourbon then takes that resolution and puts it on a bunch of commemorative boxes to go out with its bourbon. That would indicate that it thinks that's material and that it may be material to customers. I think that the cashmere and camel hair case actually does tie into this because what we're talking about is an inherent characteristic of their product. This is the way that it's marketed at its very foundation. So in that case, does the product really contain unrecycled cashmere? Here, the whole issue is we are the first African-American-owned distillery to produce this bourbon. So I think that where it's the entire focus of the advertising campaign, that's what makes this different from most of the Lanham Act cases that the court's seen in the past. Is it on the bottle? It was on commemorative boxes produced with some of the bottles. If it's not even on the bottle, why is that? You would think that if it was so critical to their advertising, that would be something you'd put on the bottle itself when consumers are just perusing down the aisle. Right, but if the product is in a box and the bottle is inside of the box. Oh, you're saying it would have been on the shelf in the box. Correct, correct. A box that's about $12 to the cost of herbs, I think. Fancy boxes. So I think that when you look at the logic behind the cashmere case, I think this is an inherent characteristic. I think that when you look at the entirety of the campaign, instead of just looking at one statement here and one statement there, it's obvious this was the key focus of their entire marketing strategy. And I do think that's enough at least to get to a jury. I think it does create a sufficient issue of fact. I know that Judge Caldwell was not necessarily deciding that as a matter of law. She was sort of in dicta at that point. But I do think it's enough to get to a jury. But fundamentally, I think when we come back to whether there's literal falsity here, there's no way to properly distinguish between these terms and hide behind make and produce when they literally, no pun intended, mean the same thing as distill in Kentucky. All right. Thanks to both of you for your helpful oral arguments and for your briefs. We very much appreciate it.